UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ZEBADIAH DEMAEYER,

    Plaintiff,

-vs-

MICHIGAN DEPARTMENT
OF CORRECTIONS,

    Defendant.

Case No. 22-cv-

Hon.

---

Jennifer Lossia McManus (P65976)
Ryan O. Rosenberg (P84530)
Fagan McManus, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com
rrosenberg@faganlawpc.com

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the transaction or occurrence
alleged in the Complaint.

NOW COMES Plaintiff, ZEBADIAH DEMAEYER, by and through his attorneys, FAGAN MCMANUS, P.C., and for his cause of action against the Defendant, states as follows:

## JURSIDCTIONAL ALLEGATIONS

1.    Plaintiff, ZEBADIAH DEMAEYER (hereinafter referred to as "DeMaeyer" or "Plaintiff"), is an individual residing in the City of Hastings, County of Barry, State of Michigan.

2.    Defendant, MICHIGAN DEPARTMENT OF CORRECTIONS, (hereinafter

referred to as "MDOC" or "Defendant") is a public employer created pursuant to the laws of the State of Michigan, and at all times pertinent hereto operated in the City of Ionia, County of Ionia, State of Michigan.

3. At all times pertinent hereto, Plaintiff worked at Defendant's Michigan Reformatory in Ionia, Michigan.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1367 (supplemental).

5. The amount in controversy is in excess of $75,000.00, exclusive of all interest, costs, attorney fees and punitive damages.

## GENERAL ALLEGATIONS

6. DeMaeyer commenced his employment with MDOC on March 29, 2015, as a Correctional Officer at the Michigan Reformatory.

7. The Michigan Reformatory houses inmates at custody Level 2 and Level 4, where Level 5 is considered the maximum custody level in Michigan prisons.

8. DeMaeyer, a male, identifies as a member of the Jewish religion.

9. Beginning in 2019, DeMaeyer has been subjected to unwelcomed conduct by MDOC co-workers and management based on his religion.

10. In 2019, then-Correctional Officer/now-Sergeant Gren and then-Sergeant/now-Lieutenant Sissell told DeMaeyer a "joke" about the Holocaust, that involved fitting Jewish people into ashtrays.

11. DeMaeyer was called the following discriminatory slurs on a regular basis:

    a. *kike*

      b.    *kike nose*

      c.    *yid*

      d.    *hebe*

      e.    *jew boy*

12. During his employment, non-Jewish Correctional Officers were not subjected to harassment based on their religion(s).

13. On April 27, 2019, Officer Nicholas directed a Nazi Salute towards DeMaeyer in the "rotunda" of the Michigan Reformatory. When DeMaeyer confronted Officer Nicholas about the Nazi Salute, Officer Nicholas did not deny doing it.

14. In April 2019 and subsequently thereafter, DeMaeyer reported ongoing religious discrimination and harassment to Lieutenant Sissell, then-Sergeant/now-Lieutenant Perez, then-Sergeant/now-Lieutenant Helder, Sergeant Joynt, Warden Skipper, and Deputy Warden King.

15. In April 2019, DeMaeyer reported ongoing religious discrimination and harassment to his labor union when MDOC's management took no remedial action.

16. Because the religious discrimination and harassment continued, DeMaeyer filed a complaint with Warden Skipper on May 25, 2021.

17. On July 13, 2021, DeMaeyer greeted an officer on the job, Jose Acosta ("Acosta"), when DeMaeyer was in the housing unit and Acosta was in the yard.

18. In response, Acosta directed a Nazi Salute towards DeMaeyer.

19. Then-Officer/now-Sergeant Norton was present and observed the Nazi salute.

20. In response, DeMaeyer admittedly directed the "middle-finger" gesture at

3

Acosta.

21. On July 13, 2021, DeMaeyer filled a written complaint about Acosta's Nazi Salute, stating that he wants this behavior to end.

22. In response, Warden Skipper told DeMaeyer that "Anti-Semitism does not exist" because DeMaeyer is Caucasian.

23. On July 15, 2021, DeMaeyer emailed then-Inspector Bonn "How do I get burned footage?" referring to a copy of camera footage. Bonn did not answer DeMaeyer's email.

24. After learning that DeMaeyer complained about Acosta, on July 24, 2021, Officer Llerrena and Officer Warren made threats to DeMaeyer that they would file false statements against DeMaeyer.

25. After learning that DeMaeyer complained about Acosta, on July 24, 2021, Officer Fortino stated to DeMaeyer that if DeMaeyer was assaulted by an inmate, Fortino would not respond.

26. On August 1, 2021, Officer Pozolo directed a Nazi Salute towards DeMaeyer when it appeared DeMaeyer was not looking.

27. DeMaeyer filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 3, 2021, EEOC Charge Number 471-2021-02965, alleging that he was subjected to religious discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

28. In August 2021, Officer Wyman told DeMaeyer, "the goal post for Jews had changed, we can treat you any way we want."

29. In August 2021, DeMaeyer was told by Officer Whitman that DeMaeyer

4

does not seem Jewish "because you're not obsessed with money."

30. In September 2021, MDOC asked DeMaeyer to submit a questionnaire regarding his report of Acosta's Nazi Salute, which DeMaeyer submitted to MDOC on September 25, 2021.

31. In the questionnaire, DeMaeyer stated that Acosta's behavior exemplified "further anti-semetic [sic] behavior that I have reported in the past violating my equal employment rights."

32. In October 2021, DeMaeyer left the labor union. Around that same time, DeMaeyer was told by Officer McElfresh that DeMaeyer's decision to leave the labor union was because "his people" just try to save every penny.

33. In October 2021, DeMaeyer was assigned to work with Acosta despite his open complaint regarding Acosta's discriminatory conduct towards DeMaeyer.

34. Acosta told DeMaeyer that DeMaeyer should work at the women's prison for reporting him.

35. DeMaeyer reported Acosta's comment verbally to Lieutenant Rambadt.

36. DeMaeyer has continued to make complaints to MDOC regarding ongoing religious discrimination.

37. On November 15, 2021, DeMaeyer submitted a letter to MDOC complaining about the discrimination and retaliation he faced.

38. In response, DeMaeyer was told his claims would be allegedly investigated by Inspector Maxwell Martin.

39. On November 22, 2021, DeMaeyer told Inspector Martin that he had more information regarding the ongoing harassment. Inspector Martin responded to DeMaeyer

5

that any other information was not relevant.

40. On November 23, 2021, Inspector Martin told DeMaeyer that he does not want any more "paperwork" to do.

41. After his November 15, 2021 letter was submitted to MDOC, DeMaeyer has more frequently been assigned to housing units where there are conflicts and gang tensions between prisoners, and has been paired in these locations with inexperienced officers.

42. After his November 15, 2021 letter was submitted to MDOC, other Correctional Officers began to frequently delay food tray deliveries to DeMaeyer's units, causing inmate agitation.

43. On December 6, 2021, Warden Skipper sent a memorandum to Internal Affairs Section Manager, Kevin Smith ("Smith"), stating that there appears to be sufficient evidence that DeMaeyer violated MDOC Work Rule #1, Humane Treatment of Individuals, on July 13, 2021, for directing a "middle-finger" gesture towards Acosta in response to Acosta directing a Nazi Salute towards DeMaeyer.

44. According to the MDOC, video footage for the July 13 incident was not submitted for investigation, nor was it saved for further review.

45. On December 14, 2021, Correctional Officers, including Officer Wyman, repeatedly approached DeMaeyer to say, "Happy Hanukkah," even when DeMaeyer repeated that the Jewish Holiday, Hannukah, ended in early December 2021.

46. On or about December 17, 2021, DeMaeyer amended his Charge of Discrimination with the EEOC, alleging that he was also retaliated against for his complaints of religious discrimination under Title VII.

47. On December 28, 2021, DeMaeyer's father was in the hospital for a medical emergency. DeMaeyer believes his requests to leave work to go to the hospital were delayed by MDOC because of his previous complaints of religious discrimination.

48. On January 25, 2022, MDOC concluded its alleged investigation regarding DeMaeyer's complaint of Acosta, finding that there was insufficient evidence to support Discriminatory Harassment and/or any other work rule or policy violation took place *against DeMaeyer*.

49. However, the same day, on January 25, 2022, Smith informed Warden Skipper that there was sufficient evidence that DeMaeyer violated MDOC Work Rule #1, Humane Treatment of Individuals, on July 13, 2021, for directing a "middle-finger" gesture towards Acosta in response to Acosta directing a Nazi Salute towards DeMaeyer.

50. Acosta continues to give Nazi Salutes to other Correctional Officers when DeMaeyer passes by Acosta to support Acosta's claim that this is allegedly how he "waves" at Correctional Officers.

51. On February 16, 2022, MDOC concluded its alleged investigation regarding DeMaeyer's November 15 letter, finding that there was insufficient evidence to support discriminatory harassment and/or any other work rule or policy violation took place.

52. On March 3, 2022, after 180 days passed since his file date of his EEOC Charge of Discrimination, the EEOC forwarded DeMaeyer's Charge of Discrimination to the U.S. Department of Justice ("DOJ"), requesting a Notice of Rights to Sue on DeMaeyer's Charge of Discrimination.

53. On April 11, 2022, the DOJ issued a Notice of Rights to Sue on DeMaeyer's Charge of Discrimination.

54. On April 12, 2022, DeMaeyer was informed for the first time by MDOC that he allegedly violated MDOC Work Rule #1, Humane Treatment of Individuals, on July 13, 2021, for giving Acosta the "middle-finger" in response to Acosta's Nazi Salute to DeMaeyer.

55. A Disciplinary Conference & Notice of Charges hearing was held on April 20, 2022, wherein MDOC alleged that DeMaeyer would receive a Written Reprimand for directing a "middle-finger" gesture towards Acosta in response to Acosta directing a Nazi Salute towards DeMaeyer.

56. On April 22, 2022, MDOC presented DeMaeyer with a "Settlement Agreement" which stated, in relevant part, that "1. [...] DeMaeyer shall receive a Written Reprimand for violation of MDOC Work Rule #1," and, "2. This settlement constitutes full and complete resolution of this discipline and all complaints and demands relative to this issue that Zebadiah DeMaeyer and [Michigan Corrections Organization] may have against the Employer or its agents."

57. On April 22, 2022, DeMaeyer emailed MDOC's Human Resources Manager, Tina Conran ("Conran"), that Number 2 of the "Settlement Agreement" was unacceptable, and asking "What is the next step?"

58. On April 25, 2022, Conran sent a reminder email on DeMaeyer, stating to return the signed agreement by Tuesday at 4:30 pm.

59. On April 25, 2022, DeMaeyer responded, "As I said I am unable to sign do [sic] to section two."

60. The same day, Conran replied that "If you are choosing to not accept the settlement agreement, then discipline will be imposed per the disciplinary grid."

61. On April 26, 2022 at 2:39pm, DeMaeyer's Counsel sent a letter to Conran informing Conran of his workplace religious discrimination EEOC claim, and stating that DeMaeyer would not sign an agreement that purports to resolve his claims of religious discrimination.

62. Conran failed to answer the April 26 letter, and issued DeMaeyer a one-day, unpaid suspension on April 27, 2022, for the alleged violation of Work Place Rule #1, instead of the lesser discipline of a Written Reprimand.

63. Plaintiff was suspended without pay on April 27, 2022.

64. Upon information and belief, Acosta was not issued any disciplinary action for directing a Nazi Salute towards DeMaeyer.

65. Plaintiff is still employed with Defendant.

## COUNT I
## VIOLATION OF TITLE VII

66. Plaintiff incorporates all above paragraphs as if specifically repeated herein.

67. Defendant is an employer within the meaning of Title VII.

68. Title VII prohibits, among other things, discrimination against an employee based upon religion.

69. Title VII also prohibits an employer's retaliation based on an employee's protected activity.

70. Notwithstanding the duties owed to Plaintiff pursuant to Title VII, Defendant discriminated against Plaintiff and took adverse action toward his because of his religion including, but not limited to:

      a.      Discriminating against Plaintiff with respect to terms and conditions of his employment, based on his religion;

      b.      Subjecting Plaintiff to a hostile work environment based on his religion;

      c.      Other acts of religious discrimination to be determined through discovery.

71. It is a violation of Title VII to retaliate or discriminate against an employee because the employee opposed disability discrimination in the workplace.

72. Plaintiff participated in protected conduct when he reported discrimination and/or retaliation to MDOC and/or to the EEOC from 2019 through the present date, including but not limited to the following dates: in April 2019, on May 25, 2021, July 13, 2021, August 3, 2021, September 25, 2021, November 15, 2021, November 22, 2021, and December 17, 2021.

73. Defendant retaliated against Plaintiff for his complaints of discriminatory/harassing conduct based on his religion in the following ways:

      a.      Subjecting Plaintiff to different terms and conditions of employment only after his complaints of discrimination;

      b.      Investigating Plaintiff's behavior in response to his report of another officer's discriminatory harassment of Plaintiff;

      c.      Issuing Plaintiff disciplinary action for reporting another officer's discriminatory harassment of Plaintiff, including presenting Plaintiff with a written reprimand, and when he did not agree to release his claims against Defendant, issuing him an increased discipline consisting of a one-day, unpaid suspension;

      d.      Other acts of retaliation to be determined through discovery.

74. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

    a. Loss of wages and earning potential;

    b. Loss of employee benefits;

    c. Loss of promotional opportunities;

    d. Loss of professional esteem and consequent damage to Plaintiff's professional career;

    e. Extreme embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

    f. Other damages to be determined.

75. The above-referenced discriminatory and retaliatory conduct by Defendant toward Plaintiff was malicious and/or engaged in with reckless indifference to Plaintiff's federally protected civil rights and, as a result, Plaintiff is entitled to punitive damages.

76. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff requests that a Judgment be entered against Defendant, in whatever amount the Court determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, punitive damages and attorney fees. Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

77. Plaintiff incorporates the above paragraphs as if specifically repeated herein.

78. At all relevant times herein, Defendant is an employer, and Plaintiff is an employee, within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* (hereinafter referred to as the "ELCRA").

79. The ELCRA prohibits, among other things, discrimination based upon religion.

80. Notwithstanding the duties owed to Plaintiff pursuant to ELCRA, Defendant discriminated against Plaintiff and took adverse action toward his because of his religion including, but not limited to:

   a. Discriminating against Plaintiff with respect to terms and conditions of his employment, based on his religion;

   b. Subjecting Plaintiff to a hostile work environment based on his religion;

   c. Other acts of religious discrimination to be determined through discovery.

81. It is a violation of the ELCRA to retaliate or discriminate against an employee because the employee opposed disability discrimination in the workplace.

82. Plaintiff participated in protected conduct when he reported discrimination and/or retaliation to MDOC and/or to the EEOC from 2019 through present, including but not limited to on the following dates: in April 2019, on May 25, 2021, July 13, 2021, August

3, 2021, September 25, 2021, November 15, 2021, November 22, 2021, and December 17, 2021.

83. Defendant retaliated against Plaintiff for his complaints of discriminatory/harassing conduct in the workplace based on his religion in the following ways:

    a. Subjecting Plaintiff to different terms and conditions of employment only after his complaints of discrimination;

    b. Investigating Plaintiff's behavior in response to his report of another officer's discriminatory harassment of Plaintiff;

    c. Issuing Plaintiff disciplinary action for reporting another officer's discriminatory harassment of Plaintiff, including presenting Plaintiff with a written reprimand, and when he did not agree to release his claims against Defendant, issuing him an increased discipline consisting of a one-day, unpaid suspension;

    d. Other acts of retaliation to be determined through discovery.

84. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct toward Plaintiff based upon his religion and participation in protected conduct, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

    a. Loss of wages and earning potential;

    b. Loss of employee benefits;

    c. Loss of promotional opportunities;

    d. Loss of professional esteem and consequent damage to Bajaj's professional career;

    e. Extreme embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

  f.  Exemplary damages;

  g.  Other damages to be determined.

85. Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff requests that a Judgment be entered against Defendant, in whatever amount the Court determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

         Respectfully submitted,

         FAGAN MCMANUS, P.C.

         By: /s/ *Ryan O. Rosenberg*
          Ryan O. Rosenberg (P84530)
          Attorney for Plaintiff
          25892 Woodward Avenue
          Royal Oak, MI  48067-0910
          (248) 542-6300
Dated:  May 24, 2022      rrosenberg@faganlawpc.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ZEBADIAH DEMAEYER,

    Plaintiff,   Case No. 22-cv-

-vs-

    Hon.

MICHIGAN DEPARTMENT
OF CORRECTIONS,

    Defendant.

---

Jennifer Lossia McManus (P65976)
Ryan O. Rosenberg (P84530)
Fagan McManus, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com
rrosenberg@faganlawpc.com

---

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES the above-named Plaintiff, by and through his attorneys, FAGAN MCMANUS, P.C., and hereby demands trial by jury on the above matter.

    FAGAN MCMANUS, P.C.

    By: /s/ *Ryan O. Rosenberg*
        Ryan O. Rosenberg (P84530)
        Attorney for Plaintiff
        25892 Woodward Avenue
        Royal Oak, MI  48067-0910
        (248) 542-6300

Dated:  May 24, 2022        rrosenberg@faganlawpc.com